## CIRCUIT COURT OF THE CITY OF WINCHESTER

Kathryn S. Bryarly

v.

Shenandoah University et al.

December 31, 1996

Case No. (Law) 96-246

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on December 19, 1996, for argument on the defendants' demurrers. Shenandoah University demurred on the grounds that its employment policy manual did not create a contract between it and its former employee, the Plaintiff, and that the Plaintiff's employment was at will, so the Plaintiff has no right of action against the university for her discharge. The Defendant Racer, the Plaintiff's former supervisor, has also demurred to the counts charging that she tortiously interfered with the Plaintiff's employment contract with Shenandoah University. Joyce A. N. Massey, Esquire, appeared for the plaintiff; and Richard C. Sullivan, Jr., and Dennis J. Quinn, Esquires, appeared for the defendants. Having considered the parties' arguments and their memoranda of authorities, the Court has decided to sustain Shenandoah University's demurrer and to sustain Racer's demurrer to Count III, but to deny Racer's demurrer to Count IV of the motion for judgment.

### I. *Statement of Material Facts*

The Plaintiff has pleaded or admitted to the following facts.

The Plaintiff was employed by Shenandoah University from February 1, 1994, through July 23, 1996, as the Publications Manager and Managing Editor of the publications of the Durell Institute.

Defendant Shenandoah University is a private university in Winchester, Virginia. The Durell Institute is a private non-profit entity which is part of Shenandoah University.

The Defendant Racer is the Director of the Durell Institute, a member of the Institute's Board of Trustees, an employee of Shenandoah University, and she was the Plaintiff's immediate supervisor.

Plaintiff alleges that she "at all times performed her job in an exemplary manner and never received any notice that her performance was deficient in any manner." Motion for Judgment, para. 28.

Plaintiff alleges that her supervisor Racer "treated Plaintiff in an abusive manner, which led the Plaintiff to file a grievance against Defendant Racer under Shenandoah's grievance system." Plaintiff's Memorandum in Opposition to Defendant Shenandoah's Demurrer, p. 1-2, summarizing averments 7-27 of the Motion for Judgment. The third and final grievance panel review recommended that Racer be removed as the Plaintiff's immediate supervisor. Plaintiff alleges that for a while Shenandoah University abided by the recommendation of the grievance panel, but that Racer gradually resumed her control over the Plaintiff. Motion for Judgment, para. 18-22.

The Plaintiff then expressed her dissatisfaction with Racer's actions to the Trustees of the Durell Institute, who held their annual meeting on July 22, 1996, and on July 23, 1996, she alleges that she was "informed that her job had been eliminated, [and she] was asked to clean out her desk and leave immediately." Motion for Judgment, para. 27.

The official letter of termination dated July 23, 1996, from Shenandoah University Dean Daniel Pavsek to the Plaintiff, which was made part of the record on the Defendants' Motion to Crave Oyer, stated:

> Following a careful review of the 1995-1996 performance of the Durell Institute and an evaluation of the 1996-1997 budget for the Institute, it has been decided that the university can no longer continue to support and produce the *Economics Newsletter* and the *Durell Journal of Money and Banking*. Therefore, effective immediately, the *Economics Newsletter* and the *Durell Journal of Money and Banking* are being discontinued as programs of the Durell Institute.
>
> Since these two programs represent the bulk of your responsibilities, it is necessary to inform you that your position is hereby terminated effective immediately. In recognition of your efforts, you will continue with full salary and benefits through 31 October 1996. Of course under the rules and regulations of the university you have the right to

appeal this decision in accordance with procedures set down in various university policies.

The Plaintiff does not allege that she appealed this decision, rather she filed this present action.

The Plaintiff has sued Shenandoah University for breach of her employment contract based on the University's Policy Manual. Motion for Judgment Counts I and II. This Policy Manual was made part of the record on the Defendant's Motion to Crave Oyer. The Policy Manual covers a broad range of subjects incident to Shenandoah University's employment policies with respect to its non-faculty employees. The preamble to the Policy Manual is a letter from the University President signed by him.

Section 2, the introduction to the Policy Manual, states:

> The right of the employee or the University to terminate the employment relationship "at will" is recognized herein and affirmed as a condition of employment. These policies are not to be construed as a contract, guarantee or condition of employment.

Defendant Shenandoah University contends that this provision is clear, and, since the employment was at will, the Plaintiff was properly terminated.

The Plaintiff claims that she could only be discharged for cause, but the Policy Manual does not expressly state this. The Plaintiff contends that to rule that the employment relationship was at will renders meaningless sections 4.8 (probationary period of at least three months); section 7.3.4 (standards of conduct); and section 9.1.2 (dismissals) of the Policy Manual, and that it can be inferred from these provisions that she could only be discharged for cause.

Section 4.8 of the Policy Manual provides that:

> During the probationary period either the employee or the University may end the relationship without stated cause or impact on the employee's record.

Section 7.3.4 sets forth the general provisions of conduct expected of University employees.

Section 9.1.2 of the Policy Manual states:

> If an employee is dismissed after the probationary period with cause, a full written explanation of the reasons will be given the employee (see Section 7.3.4).

The Policy Manual does not provide that an employee who is discharged without cause is to be given an explanation of his discharge.

Section 9.1.3 of the Policy Manual states:

> If an employee's position is eliminated, a written explanation will be given the employee by the employee's supervisor. A minimum 30 day advance notice to the employee is required. Severance pay will not be given.

This is the provision which the Defendant Shenandoah University contends applies to the Plaintiff's discharge.

The Plaintiff also alleges that the individual defendant Racer by a variety of actions (Motion for Judgment Counts III and IV), tortiously interfered with her employment relationship with Shenandoah University, and Racer has demurred to these counts.

## II. *Conclusions of Law*

In considering a demurrer the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). *Accord CaterCorp v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). Having examined the motion for judgment, which is a claim against Shenandoah University for breach of an employment contract (Counts I and II) and a claim against Racer for tortious interference (Counts III and IV), and drawing "all reasonable inferences fairly and justly drawn from the facts alleged ... in aid of the pleadings," it would appear that Counts I, II, and III fail to state a right of action against the respective defendants.

Whether a contract is ambiguous or incomplete is a question of law. *See Ross v. Craw*, 231 Va. 206, 213, 343 S.E.2d 312 (1986). "The ideal result that legal draftsmen seek to attain and that judicial interpreters commonly seek to find in a written contract is that a judge should be able, by reading the contract without lifting his eyes from the page, to determine its one and only 'true' meaning in relation to the issues being litigated. Once this 'true' meaning has been ascertained, no other evidence should be permitted to fritter away the meaning and thus make written contracts unreliable." Patterson, *The*

*Interpretation and Construction of Contracts*, 64 Colum. L. Rev. 833-855 (1964).

The Supreme Court of Virginia has long followed the plain meaning rule in cases of contract construction, and recent cases indicate that there is no trend toward relaxation of that rule. *See Aetna Cas. & Sur. Co. v. Fireguard Corp.*, 249 Va. 209, 215, 455 S.E.2d 229 (1995); *Brooks v. Bankson*, 248 Va. 197, 203-204, 445 S.E.2d 473, 476-77 (1994); *Clinch Valley Physicians v. Garcia*, 243 Va. 286, 414 S.E.2d 599 (1992); and *Graphic Arts Mutual Ins. Co. v. C. W. Warthen Co.*, 240 Va. 457, 459-460, 397 S.E.2d 876 (1990). "A corollary to the last stated principle [plain meaning rule] is that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396 (1984).

The Policy Manual of Shenandoah University is clear and unambiguous.

Assuming arguendo the Plaintiff's contention that the Policy Manual was a contract, a termination for cause provision cannot be inferred to contravene the clear language of Section 2, that the employment relationship was "at will." *See Progress Printing Co. v. Nichols*, 244 Va. 337, 421 S.E.2d 428 (1992) (Although the personnel handbook provided that "[t]he employer shall not discharge or suspend any employee without just cause," the employee had signed a statement acknowledging the at will character of the employment, so the employment was at will.). *Accord Miller v. SEVAMP, Inc.*, 234 Va. 462, 466, 362 S.E.2d 915 (1987) (Wrongful termination action based on personnel manual which stated that the Employee "may be dismissed at the discretion of the Executive Director" was demurrable.). "Where there is an expressed and enforceable contract in existence which governs the rights of the parties, the law would not imply a contract in contravention thereof." *Royer v. Board of County Supervisors*, 176 Va. 268, 280, 10 S.E.2d 876 (1940).

The Policy Manual is clear, and it stated that the relationship was "at will." No contractual provision can be implied to contravene this clear language. There is no express provision in the Shenandoah University Policy Manual providing that an employee shall not be discharged without just cause. Moreover, the Plaintiff was discharged pursuant to section 9.1.3, and, even if she were entitled to thirty days notice as argued, by being paid for ninety days following termination, she suffered no damage from any lack of notice. "[W]ithout damage to the Plaintiff, no right of action accrues ... ." *Locke v. Johns-Manville Corp.*, 221 Va. 951, 956, 225 S.E.2d 900 (1961) (a tort action).

In today's complex work environment, employers regularly promulgate detailed policy and personnel manuals to engrain the employment ethos in the

employee and to describe benefits, working conditions, and myriad other facets of the modern work place. However, such "employee handbooks generally do not have the characteristics of bilateral contract documents ... ." *Progress Printing Co. v. Nichols*, 244 Va. 337, 340-341, 421 S.E.2d 428 (1992). The primary purpose of these manuals is to educate and insure uniformity of treatment among similarly situated employees. The Policy Manual is typical of such documents. In large measure, these documents frequently do regulate the nine to five relationship between the employer and the employee, but they rarely contain the employment contract between the individual employee and his or her employer; for that reason they are silent on such critical components of the employment relationship as term of service and rate of compensation. The Policy Manual clearly states that "*This manual is the official statement of Shenandoah University's non-faculty personnel policies ... . These policies are not to be construed as a contract ... of employment.*" Policy Manual, Section 2 (emphasis added). What could be clearer?

As the Supreme Court of Virginia stated in *Graham v. Central Fidelity Bank*, 245 Va. 395, 399, 428 S.E.2d 916 (1993), in this case the provisions of the Policy Manual "were simply some of the conditions of her continued at-will employment." *See generally Spiller v. James River Corp.*, 32 Va. Cir. 300 (Richmond 1993).

The tort of interference with an existing at will contract is actually comprised of four elements:

1. The existence of the contract.
2. Knowledge of the existence of a contract on the part of the defendant.
3. The use of improper methods in the intentional interference causing a termination of the contract.
4. Resulting damage to the party whose contract was disrupted.

*See, Hilb, Rogal and Hamilton Co. of Richmond v. Depew*, 247 Va. 240, 245-246, 440 S.E.2d 918 (1994).

Where a contract is terminable at will as was the Plaintiff's employment contract with Shenandoah University, the Plaintiff must prove "not only intentional interference that caused the termination of the at-will contract, but also that the defendant employed 'improper methods'." *Peace v. Conway*, 246 Va. 278, 281 435 S.E.2d 133 (1993). The *Peace* court relied upon *Duggin v. Adams*, 234 Va. 221, 226-228, 360 S.E.2d 832 (1987), in which the Virginia Supreme Court held:

[W]hen a contract is terminable at-will, a Plaintiff in order to present a prima facie case of tortious interference must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the Defendant employed "improper methods" … . Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules … Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship … Sharp dealing overreaching, or unfair competition may also constitute improper methods.

Generally, it is a jury question as to whether the actor's methods are improper and whether the other elements of the tort of interference have been proved. Count IV, which alleges that Racer tortiously interfered with the Plaintiff's at will employment contract with Shenandoah University, will withstand demurrer.

## III. *Decision*

For the foregoing reasons it is adjudged and ordered that:

1. The Defendant Shenandoah University's demurrer is sustained, and the Motion for Judgment is dismissed as to Shenandoah University.

2. The Defendant Racer's demurrer is sustained as to Count III and overruled as to Count IV. Defendant Racer shall file a grounds of defense to Count IV of the motion for judgment on or before January 23, 1997.