# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Feddeman & Co.

v.

Langan Associates et al.

## April 22, 1999

## Case No. (Law) CL980227

BY JUDGE ALFRED D. SWERSKY

This matter is before the Court on Defendants' Motions to Strike Plaintiff's evidence and in the alternative to set aside the verdict. At the conclusion of Plaintiff's evidence, the Court took Defendants' Motions to Strike under advisement and proceeded to hear Defendants' evidence and submitted the case to the jury. The result was a verdict in favor of Plaintiff in the amount of 3.3 million dollars. Defendants now seek a ruling on their Motions to Strike or in the alternative a new trial for certain alleged errors of law.

For reasons that follow, Defendants' Motions to Strike the evidence will be granted, and the Court, therefore, will not rule on the alternative motion for a new trial.

The material evidence is not seriously in dispute, and the parties have argued the effect of the evidence rather than any substantial conflict; hence, credibility of witnesses is not seriously in conflict.

Plaintiff alleged business conspiracy, breach of fiduciary duties by directors and employees, tortious interference with contract, and usurpation of business opportunity. All causes of action are alleged to have arisen from the same set of facts and circumstances.

Several employees and directors of Plaintiff (buyers group) sought to purchase the 95% interest in the company belonging to W. Kent Feddeman, and negotiations were ongoing. The plan, known to Mr. Feddeman, was for this group to acquire his interest and then effect a merger or consolidation with Defendant Langan Associates. As negotiations bogged down, the buyers group inquired of Langan whether or not they could individually come to work at Langan if they were unsuccessful in acquiring Mr. Feddeman's interest. Defendant John Langan, on each occasion, withheld answering, directing instead that negotiations continue with Kent Feddeman to acquire the company. During the months of September, October, and November of 1997, numerous meetings were held between the representatives of the buyers group and Langan, and meetings were held of the buyers group itself to discuss their options. These meetings were not during usual business hours and not on company premises. When the difficulties in the negotiations arose and the buyers group began to explore their options, they sought legal counsel on how to leave Plaintiff lawfully, if that became their only option. The counsel they retained also represented Langan Associates. They met with counsel and furnished him information, including the fact that none of them were subject to non-competition clauses in their employment contracts with Plaintiff. Counsel advised them on how to proceed lawfully to leave Plaintiff as a group if the negotiations to acquire Plaintiff failed. The evidence is clear that they followed the advice.

No other employees of Plaintiff were solicited to leave until after the buyers group resignations were submitted; no buyers group meetings occurred on company property nor during regular business hours; no disparaging remarks were made about Plaintiff nor Mr. Feddeman to any client; and, significantly, no clients were solicited prior to the resignations. It is not disputed that the Defendants believed that most of their clients would follow them to their new employment whether as Feddeman & Co., Langan Associates, or anywhere else. The basis for this belief was the tendency of clients to follow the actual accountant who performed or directly supervised the client's work. No former client of Feddeman & Co. testified as to any improper conduct by Defendants.

Once the resignations were submitted, it was within a very short time that the buyers group were offered jobs with Langan and began to notify clients and to solicit their business. The contracts of the clients with Plaintiff are clearly at-will contracts. Additionally, within several hours of the resignations, a reception was held at Langan to which Feddeman & Co. employees were invited. They were offered jobs at their same salary level as with Plaintiff and

promised raises equal to their planned bonuses at Feddeman & Co. Numerous staff employees opted to leave Plaintiff, and it had to secure an operating arrangement with another accounting firm to continue to do the work of its remaining clients. Approximately 50% of Plaintiff's clients and only about twenty-five of its employees left to join Langan. The evidence also shows that Langan was totally unprepared for the sudden influx of employees. A few of the employees were advised prior to resignation as to what was occurring, but no employee testified that they were solicited or told that they would be hired prior to the buyers group resignation.

## I. *Civil Conspiracy*

There is no evidence from which the jury could properly have found that these Defendants combined and acted "intentionally, purposefully, and without lawful justification" for the purpose of injuring Plaintiff. *Commercial Bus. Sys. v. BellSouth*, 249 Va. 39 (1995). The legal malice requirement of *Commercial Bus. Sys., supra*, and *Advanced Marine Enters. v. PRC, Inc.*, 256 Va. 106 (1998), have not been proved by Plaintiff. There is no evidence that the Defendants combined with an intent to injure Plaintiff, nor is there evidence of unlawful acts in furtherance of the combination. Plaintiff's burden to prove the unlawful conspiracy to injure it in its trade or business by intentional conduct without legal justification has not been met even taking the evidence in the light most favorable to Plaintiff. This is even more obvious with regard to Defendants Langan Associates and John Langan. There is no evidence that they were party to any combination for any purpose other than to effectuate the planned merger.

Assuming arguendo that counsel retained by the buyers group had a conflict of interest because of his firm's representation of Langan's interest, such a conflict would not, in and of itself, be sufficient to prove the conspiracy to injure Plaintiff.

## II. *Breach of Fiduciary Duties*

Plaintiff argues that a breach of fiduciary duties of the employees and director Defendants occurred when confidential client engagement letters were shown to counsel who was advising them; when they used Plaintiff's pricing information in the solicitation of the clients; and in the use of salary information in soliciting the employees.

Defendants' offers to match Plaintiff's charges and salaries are not breaches of a fiduciary duty. Such offers presuppose that the offeree already has knowledge of these figures, and no revelation of confidential or proprietary information occurred. Defendants are not required by their fiduciary duties to erase from their memories all information acquired during their employment. In addition, the client engagement letters were forms commonly used in the industry and were originally drafted from "boilerplate" forms available to anyone in the business. The furnishing of samples of these letters to counsel for a legal opinion as to the at-will nature of the agreement is not a breach of fiduciary duty by Defendants.

Plaintiff argues that the planning of the departure by its employees constituted a breach of their duties. However, they are permitted to make reasonable preparations to compete within certain limitations. *Restatement (Second) of Agency § 393.* This is certainly what occurred here. The evidence reveals that the employee Defendants scrupulously adhered to the advice of counsel as to how to prepare to leave, if that became their option. They did not solicit employees nor clients; they held no meetings on company premises nor during regular business hours; nor did they disparage Plaintiff to its employees or clients. Of course, meetings were required, but the evidence is clear that no unlawful conduct occurred at these meetings, nor were improper actions taken. The mere preparation for leaving and advising others of the potential plan were not violations of Defendants' duties.

It is singularly apparent in this case that Defendants intended no harm to Plaintiff. Their intention and substantial actions taken were aimed at acquiring the majority interest in Plaintiff company. It was not until the last possible moment that it became apparent that they would not be successful and that no alternative was left but to resign. Until that time, a matter of hours before the resignations, the plan was to acquire the company, not to injure it.

### III. *Tortious Interference with Contract*

The employees of Feddeman & Co., as well as its clients, were bound to Plaintiff by at-will contracts. This is not seriously disputed by Plaintiff.

Employee contracts were not for specified periods of time and were terminable by Plaintiff or the employee at any time. The employees, including the buyers group, were not bound by non-competition clauses and were, therefore, free to leave and to compete with Plaintiff. Likewise, the contracts with clients were engagement letters terminable by either party at-will.

For Plaintiff to succeed on this claim, it must show not only intentional interference with the agreements but that "improper methods" were used. *Peace v. Conway*, 246 Va. 278 (1993). Such improper methods are those that are illegal or independently tortious, violative of statutes, regulations, or established common law rules. They may include deceit, defamation, misuse of confidential information, or breach of fiduciary duty. *Duggin v. Adams*, 234 Va. 221 (1987).

No improper methods have been shown by Plaintiff's evidence. The Court has already found there is no evidence of breaches of fiduciary duties nor of the use of confidential information by Defendants.

Absent proof of these improper methods, Plaintiff's claim for tortious interference with contract must fail.

## IV. *Usurpation of Corporate Business Opportunities*

Plaintiff argues that it lost business opportunities with Defendant Langan and with an outside accounting firm, Johnson Lambert, with which it had discussed possible merger. The discussions with Johnson Lambert had arisen only shortly before the resignations and were at the insistence of Kent Feddeman after he knew of the potential resignations. The evidence is clear from Mr. Feddeman's testimony that Johnson Lambert discussions were premised on their offering assistance to him to do the client's work in the event of the threatened resignations. There is no evidence of the probability of future economic benefit to Plaintiff from the Johnson Lambert deal at the time of the resignations or shortly before that time. In fact, the evidence shows that Mr. Feddeman has benefitted personally from an arrangement with Johnson Lambert based on work done for former clients of Plaintiff. The record is silent as to what benefits accrue to Plaintiff for Johnson Lambert's work done for its former clients. Hence, not even a possibility of economic benefit for Plaintiff has been shown from the Johnson Lambert deal. See, *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292 (1997).

Secondly, Plaintiff claims that its corporate opportunity for a merger with Langan was usurped by defendants. This claim is easily disposed of. The merger deal with Langan was contingent upon the success of the buyers group in acquiring Mr. Feddeman's interest in Plaintiff. His instructions to Defendant Kotwicki were to negotiate a buy-out of his interest in Plaintiff and then to merge with Langan. Such a condition precedent never occurred. Thus, there was no corporate opportunity for a merger with Langan, and none could be usurped.

For the foregoing reasons, Defendants' Motions to Strike Plaintiff's evidence and enter judgment in their behalf will be granted. In view of this ruling, it is not necessary for the Court to rule on individual Defendants' motions regarding the sufficiency of the evidence as to them particularly nor on Defendants' motion for a new trial for errors of law.