494

## CIRCUIT COURT OF THE CITY OF ROANOKE

International Paper Co.,
d/b/a XPEDX

v.

John Ashley Brooks

December 23, 2003

Case No. CL03-497

BY JUDGE CHARLES N. DORSEY

This matter comes on upon the demurrer of the defendant.

*Facts*

John Ashley Brooks worked as Sales Manager for International Paper Co.'s ("IPC") Roanoke office from May 1998 through 1999, when he continued to work for IPC as a sales representative. He worked as a sales representative until he terminated his employment on January 6, 2003. Bill of Compl. at ¶ 2. In connection with his employment with IPC, Mr. Brooks executed a Non-Compete Agreement that provides:

> 24. *Anti-Solicitation.* Employee agrees, in consideration of the mutual covenants set forth herein, that he/she will agree not to solicit other employees of the Employer to join Employee (new employer) in a newly formed business, in direct competition with Employer.

*Id.* at ¶ 4.

Upon leaving his employment with IPC, Mr. Brooks began working for its competitor, Unisource. IPC alleges that Mr. Brooks then began to solicit IPC's sales employees to leave IPC and work for Unisource. These individuals are alleged to have met on several occasions to discuss their leaving IPC *en masse* and taking their customer accounts to Unisource. On June 6, 2003, Mr.

Gilliam resigned, and, on June 9, 2003, two other IPC employees resigned. All three began working for Unisource. In the following week, all three contacted sales associates at IPC to offer employment with Unisource. *Id.* at ¶¶ 5-14. Mr. Brooks is alleged to have told a mutual acquaintance "have Rob call me because legally I cannot call him." *Id.* at ¶ 15.

On June 26, 2003, IPC filed its Bill of Complaint against Mr. Brooks. In it, IPC asserts four claims: Count I alleges Breach of the anti-solicitation portion of the Non-Compete Agreement; Count II alleges Tortious Interference with Contract; and Count III and IV allege Conspiracy to Injure Business and Common Law Conspiracy.

*Analysis*

When ruling on a demurrer, the Court must determine whether the factual allegations in the bill of complaint are sufficient to state a cause of action or facts upon which relief can be granted. Va. Code § 8.01-273(A) (2003). The Court is required to consider as true all material facts that are properly pleaded or implied and all reasonable inferences that can be drawn from these facts. *Riverview Farm Assocs. v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000). "A demurrer does not test matters of proof and, unlike a motion for summary judgment, does not involve evaluating and deciding the merits of a claim; it tests only the sufficiency of factual allegations to determine whether the pleading states a cause of action." *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 216, 227-28, 541 S.E.2d 909, 914 (2001). In making this determination, the Court may examine both the substantive allegations contained in the complaint and any accompanying exhibits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). As long as a claim contains sufficient allegations of material fact to inform the respondent of its true nature and character, it will withstand demurrer. *Id.* The demurrer standard does not, however, admit the correctness of the conclusions of law found in the challenged pleading. *Fuste v. Riverside Healthcare Assn.*, 265 Va. 127, 131, 575 S.E.2d 858, 861 (2003).

A. *Breach of Anti-Solicitation Clause*

In support of its claim for breach, IPC has produced the Anti-Solicitation clause of a Non-Compete Agreement executed between IPC and Mr. Brooks, which is reproduced above. Mr. Brooks contends that the clause is invalid on its face and unenforceable, or, alternatively, if valid, inapplicable.

Assuming the employee anti-solicitation clause is severable from the other non-compete provisions of the agreement, such a clause still remains a type of

restrictive covenant between employer and employee. The nature of the clause is that the employee, upon leaving his employment, agrees to refrain from soliciting certain people for hire who are not parties to the contract. The Supreme Court has held that a similar agreement to forgo the ability to *hire* non-parties to the contract "is a contract in restraint of trade and will be held void as against public policy if it is unreasonable as between parties or is injurious to the public." *Therapy Serv., Inc. v. Crystal City Nursing Ctr., Inc.,* 239 Va. 385, 388, 389 S.E.2d 710, 711 (1990). Although an agreement not to *solicit* other employees for hire is slightly narrower than an agreement not to hire those employees, it is still a form of restraint on trade and subject to the stricter standards adopted by the Supreme Court. *See Anteon Corp. v. BTG, Inc.,* 62 Va. Cir. 41, 2003 Va. Cir. LEXIS 85, (Fairfax 2003) ("a non-solicitation clause must be narrowly tailored, as "covenants in restraint of trade are not favored" and are to be "strictly construed.").

"Covenants in restraint of trade are not favored, will be strictly construed, and, in the event of an ambiguity, will be construed in favor of the employee." *Modern Environments, Inc. v. Stinnett,* 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002). Further, the employer has the burden to show that the restraint is reasonable. It must be "no greater than necessary to protect a legitimate business interest ... not unduly harsh or oppressive in curtailing an employee's ability to earn a livelihood, and ... reasonable in light of sound public policy." *Id.* (citing *Roanoke Engineering Sales Co. v. Rosenbaum,* 223 Va. 548, 552, 290 S.E.2d 882, 884 (1982)). Central to this reasonableness inquiry are limits on duration, geographic area, and scope of the restrictions. *Simmons v. Miller,* 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001).

IPC argues, as it must, that the anti-solicitation clause "reasonably protects International Paper's legitimate business interest in preventing former employees from cherry-picking its most promising and highly trained employees." Int'l Paper's Mem. in Opp. to Dem. at 11. But, although the scope of the clause is more limited than a general non-compete provision, its restrictions are not narrowly tailored to accomplish its purpose. The clause contains no limits in duration or geography. IPC's legitimate interest in keeping its employees would not ordinarily justify a clause restricting a former employee from soliciting any IPC employee in perpetuity and worldwide.

The fact that critical limitations concerning duration and geography are missing is significant. Their absence supports the conclusion that the specific language used in the anti-solicitation clause, "employee *agrees* ... that he/she *will agree* not to solicit other employees," (emphasis added) is precatory in nature and too vague to be enforced. An agreement to make an agreement is not enforceable because there is no mutual assent of the contracting parties to

the terms of the agreement, leaving the trial court to speculate as to the agreements' terms. *See Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364, 281 S.E.2d 818, 820 (1981); *Kay v. Professional Realty Corp.*, 222 Va. 348, 351, 281 S.E.2d 820, 822 (1984); *Myers v. Newell*, 34 Va. Cir. 152, 153 (Hanover County 1994). This is especially true where, as here, the agreement must be construed against its drafters because of its function as a restraint on trade. Although Virginia courts are reluctant to render contracts void for indefiniteness or lack of certainty, *High Knob, Inc. v. Allen*, 205 Va. 503, 138 S.E.2d 49 (1964), an agreement to agree, without specifying more, constitutes only an agreement to negotiate terms at a later date. *Aetna*, 222 Va. at 363, 281 S.E.2d at 819.

The Plaintiff here admits that this section may have been poorly drafted, but they urge the court to read it in light of the surrounding circumstances where, they argue, its terms are made definitive. This would perhaps be the case if this agreement placed no restraint on competition. When strictly construed against the employer/drafter, however, the provision's indefinite "agreement to agree" language, combined with the absence of key terms such as geography and duration, clearly indicates that later negotiations are necessary for the provision to take effect. Even if the clause were permissible under Virginia's public policy, its language would still be too vague and indefinite to be enforceable.

Apart from public policy considerations and the indefinite provisions of the clause, IPC's allegations themselves fail to adequately state a claim for breach. Strictly construed against the employer, the plain meaning of the clause's language, "newly formed business in direct competition with employer," does not support the allegations in the Bill of Complaint. IPC alleges only that Mr. Brooks left IPC, accepted employment with IPC's competitor, Unisource, and solicited IPC's employees on behalf of Unisource. Thus, even were the Court to have found the clause sufficiently narrowly tailored to protect IPC from former employees starting new businesses and soliciting IPC's employees to join them, IPC still would not state a claim for breach. Here, its employee is not alleged to have branched off on his own, but instead is alleged to have joined with and solicited on behalf of an established competitor. The demurrer as to Count I is sustained with leave granted to amend if the plaintiff be so advised.

**B.** *Counts II through IV: Tortious Interference, Business Conspiracy, and Common Law Conspiracy*

Having sustained Mr. Brook's demurrer as to IPC's claim for breach, the above claims become inadequate to survive demurrer as drafted. More facts are needed in order maintain these allegations.

For a claim of tortious interference of at-will employees to survive demurrer, some form of "improper methods" or actions that are independently tortious must be alleged. *Peace v. Conway,* 246 Va. 278, 281, 435 S.E.2d 133, 135 (1993). Without something more, mere solicitation of employees to leave IPC and transfer their accounts to Unisource does not rise to an actionable level of tortious interference. Likewise, for IPC's business conspiracy claims to survive, they must provide enough core facts to support the inference that Mr. Brooks acted with the requisite legal malice. Va. Code §§ 18.2-499 and 18.2-500 require proof of some form "legal malice," or "proof that the defendant acted intentionally, purposefully, and without lawful justification." *Advanced Marine Enters. v. PRC, Inc.,* 256 Va. 106, 117, 501 S.E.2d 148, 155 (1998). IPC's common law conspiracy claim requires additional factual allegations to ground the inference of concerted action to accomplish an unlawful purpose. *See Commercial Bus. Sys. v. BellSouth Servs.,* 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995).

Accordingly, the demurrers to Counts II, III, and IV will be sustained with leave to amend.