# CIRCUIT COURT OF THE CITY OF NORFOLK

Professional Heating
and Cooling, Inc.

v.

Donald G. Smith
and Freedom Mechanical, Inc.

April 2, 2004

Case No. (Chancery) CH04-223

BY JUDGE EVERETT A. MARTIN, JR.

Donald Smith worked for the plaintiff as a service technician from October of 1992 through March 2, 2001. On April 27, 1993, he signed the "No Piracy Agreement" at issue. On March 2, 2001, Smith left the plaintiff's employ to move to Costa Rica; he hoped to live there permanently. There was no bitterness on either side at the time of Smith's resignation. Owing to the ill health of his mother-in-law, Smith returned to the United States in June of 2001. He again applied for employment with the plaintiff, and he resumed work there on June 11, 2001. He never signed another "No Piracy Agreement."

When Smith resumed his employment in June of 2001, he received the same employee benefits he would have had if he had never left, although there were conflicts in the testimony about whether he was immediately entitled to two weeks vacation or had to wait a year and whether the benefits were bestowed or negotiated. In the view I take of the case, these conflicts need not be resolved.

Smith resigned from the plaintiff's employ again on October 17, 2003, and he then began to work for Freedom Mechanical, Inc., a competitor of the plaintiff. There was no evidence at the hearing of March 25th *ult.* that Smith solicited any of the plaintiff's customers before he began to work for

Freedom Mechanical. Mr. Charlie Dougherty of Quality Suites Lake Wright testified that the plaintiff unsuccessfully solicited him for Freedom Mechanical in December of 2003. The testimony of Mr. Mark Lynn of the Harbor Club and defendants' exhibit 1 establish that one of the plaintiff's technicians was unable to repair a food warmer on November 13, 2003, and that the Harbor Club thereafter sought out and found Smith. The Harbor Club now uses Freedom Mechanical for work the plaintiff previously performed. The evidence concerning Rudee's is somewhat vague. The plaintiff still has the preventive maintenance contract, but it has received no service calls since Smith left in October. There was no evidence that Smith solicited that account for Freedom Mechanical before October 17, 2003.

Smith's knowledge of what might be called the plaintiff's proprietary information is rather limited. He knows the identity of many of the plaintiff's customers and its labor rate. The testimony of Richard Green, a witness for the plaintiff and a brother of the plaintiff's principal stockholder, corroborates Smith's testimony that technicians do not negotiate the preventative maintenance contracts, do not know the profit margin, and do not bid jobs or set prices or labor rates.

In ruling on an application for a preliminary injunction, "a traditional equitable remedy of long-standing," Bryson, *Virginia Civil Procedure* (3d ed. 1997), p. 308, the court must consider (1) the likelihood the plaintiff will ultimately prevail on the merits, (2) irreparable harm to the plaintiff if the injunction is not granted, (3) irreparable harm to the defendant if the injunction is granted, and (4) the lack of an adequate remedy at law for the plaintiff. *Id.* at 309 and Virginia circuit court cases cited therein. I am not aware of any decision of the Supreme Court of Virginia on the issue. The plaintiff seeks relief under four causes of action pleaded in its bill of complaint. Both defendants have demurred to each of the four.

### Breach of Contract

I sustain the defendant's demurrers to this claim because I find Smith's "No Piracy Agreement" expired in March of 2003. The agreement provides:

> The purpose of this agreement, between Professional Heating & Cooling, Inc., and Don Smith, employee of Professional Heating & Cooling, Inc., is to establish a two year, no compete period from the date of termination of employment of the named employee.
>
> During this two year no compete period, the named employee may not solicit, cause others to solicit, or do any work for any customers of Professional Heating & Cooling, Inc., from the day of termination.

In Virginia, "contracts are construed as written, without adding terms that were not included by the parties," and "when the terms of a contract are clear and unambiguous, a court must give them their plain meaning." *Amchem Products v. Asbestos Cases Plaintiffs*, 264 Va. 89, 98, 563 S.E.2d 739, 744 (2002). Furthermore, "covenants not to compete are restraints on trade and accordingly are not favored. ... As a restraint of trade, the covenant must be strictly construed. . . ." *Motion Control Systems, Inc. v. East*, 262 Va. 33, 37, 546 S.E.2d 424, 425-26 (2001).

"Termination" is unambiguous. It means the "end" or "conclusion" of something. Smith ended his employment with the plaintiff on March 2, 2001. His departure at that time was not a "leave of absence." There was no agreement between Smith and the plaintiff about the duration of his absence, nor was there any agreement, or even any expectation that Smith would return to work for the plaintiff. There is no provision in the agreement or any overriding principle of law that would toll the running of the two year period or reimpose the entire period when Smith resumed employment. To do so would re-write the parties' contract and violate the rule to strictly construe such agreements. This view is in accord with the only reported case with similar facts that has been cited. *Reagan Outdoor Advertising v. Lundgren*, 692 P.2d 776 (Utah 1984).

### Breach of Fiduciary Duty of Loyalty

The bill of complaint only appears to allege a breach of this duty by Smith after he resigned from the plaintiff's employ in October 2003. The defendants appear to concede such a duty exists. The bill of complaint alleges that Smith had access to proprietary information of the plaintiff (paragraphs 8 and 9) and that he has used and continues to use this information to solicit the plaintiff's customers on behalf of Freedom Mechanical (paragraph 24). The defendants also seem to concede this is sufficient. See defendants' Memorandum of Law at page 6. Smith's demurrer to this claim is overruled; Freedom Mechanical's is sustained because it was never the plaintiff's employee.

However, I do not find from the evidence at the hearing that the plaintiff is ultimately likely to prevail on this claim. There is no evidence Smith took any documents or records; if he used anything, he used only his memory of the plaintiff's labor rate and the identity of its customers, which he properly acquired during his employment. This is permissible. See *Peace v. Conway*, 246 Va. 278, 281-82, 435 S.E.2d 133, 135 (1993).

*Tortious Interference with Contracts
and Tortious Interference with Business Relations*

The bill of complaint does not allege, nor was evidence introduced at the hearing to show, that the plaintiff's preventive maintenance contracts are for a definite term and not terminable at will. Thus, the plaintiff must allege for both claims the elements stated in *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985), and an improper method. *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832 (1987). The plaintiff has pleaded the necessary facts regarding Smith, the allegation of an improper method being found in paragraph 24. I agree with Freedom that the pleadings are not sufficient to state these claims against it.

The third element of these causes of action is "intentional interference inducing or causing a breach or termination of the relationship or expectancy." *Duggin*, 234 Va. at 226-27, 360 S.E.2d at 835. The evidence at the hearing established neither this element nor an "improper method." The plaintiff retains its contract with Quality Suites Lake Wright. The plaintiff's contract or relationship with the Harbor Club was terminated because of the latter's dissatisfaction with the quality of the work. The plaintiff still has the preventive maintenance contract with Rudee's. To date, it appears to have lost only the service calls, and no evidence was introduced to explain the loss. There was no evidence of other lost work, and there was no evidence of an improper method. See *Peace v. Conway, supra.*

The application for a temporary injunction is denied. Ms. Berg shall prepare the appropriate decree allowing the plaintiff thirty days from the date of this letter to file an amended bill of complaint, if it be so advised.