**NORTEC COMMUNICATIONS, INC., Plaintiff,**

v.

**Carl LEE–LLACER, Defendant.**

Case No. 1:08cv127 (GBL).

United States District Court,
E.D. Virginia,
Alexandria Division.

April 15, 2008.

Derek Lewis Burrows, Law Office of Mark R. Dycio PC, Fairfax, VA, for Plaintiff.

Timothy Brooks Hyland, Leffler & Hyland PC, Fairfax, VA, for Defendant.

***MEMORANDUM OPINION***

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant Carl Lee–Llacer's Motion to Dismiss Counts I (§ Breach of Contract), III (Breach of Fiduciary Duties), V (Tortious Interference with Contract), and VI (Statutory Conspiracy). This case concerns Mr. Lee–Llacer, a former employee of Nortec, and whether the nonsolicitation and non-competition clauses contained within his employment contract with Nortec are valid. There are four issues before the Court. The first issue is whether the non-competition and non-solicitation clauses of Mr. Lee–Llacer's employment agreement with Nortec are facially overbroad so as to render them unenforceable. The second issue is whether the allegations in the complaint support a claim of breach of fiduciary duty. The third issue is whether Nortec has properly pled that Mr. Lee–Llacer used improper means to tortiously interfere with the contracts of other Nortec employees. The fourth issue is whether Nortec has alleged that Mr. Lee–Llacer acted with the requisite intent to maintain a claim for statutory conspiracy. The Court holds that the restrictive non-competition and non-solicitation provisions in the Nortec employment contract are invalid and unenforceable because the provisions are not limited to the performance of the same work that Mr. Lee–Llacer did as a Nortec employee/ and there are several undefined key terms. The Court holds that the allegations in the complaint do not support a claim of breach of fiduciary duty because there is no allegation of conduct *during the course of Mr, Lee–Llacer's employment* with Nortec that would support such a claim. The Court also holds that Nortec has failed to sufficiently plead tortious interference with contract because it has not alleged the use of improper means. Finally, the Court holds that Nortec has alleged that Mr. Lee–Llacer acted with the requisite intent to maintain a claim for statutory conspiracy because Nortec is not required to prove that Mr. Lee–Llacer's primary and overriding purpose was to injure Nortec's business.

## I. BACKGROUND

Defendant Carl Lee–Llacer was hired by Plaintiff Nortec Communications as a consultant in January of 2006. Nortec is engaged in the business of information technologies consulting. Upon being hired by Nortec, Mr. Lee–Llacer signed an Employment Agreement containing non-disclosure, non-compete, and non-solicitation agreements. The provisions of Mr. Lee–Llacer's employment contract that are at issue in this suit state the following

> *Non–Competition.* The Employee agrees that he or she shall not, for a period of twelve (12) months after the termination of the employment relationship for any reason:
>
> (a) become employed by or perform services for any existing customer or client of the Company for whom Employee has performed services while employed by the Company—other than on behalf of the Company—if such employment or services relates to the products or services offered by the Company;
>
> (b) directly or indirectly ... engage in a business in direct competition with the Company within the State of Maryland, Commonwealth of Virginia or the District of Columbia.
>
> *Non–Solicitation.* The Employee agrees that he or she shall not, for a period of twelve (12) months following the termi-

nation of the employment relationship for any reason, directly or indirectly:

(a) solicit orders for services, materials and/or equipment, of a kind and nature like or similar to services performed or materials or equipment provided, by the Company, from any party (i) that was a client of the Company, during the Employee's employment with the Company (ii) for whom the Employee performed services on behalf of the Company, or (iii) from whom the Employee solicited business, while employed with the Company;

(b) urge or suggest that any customer or client of the Company discontinue doing business with the Company; or

(c) solicit, encourage or induce any employee of the Company to terminate his or her employment, or otherwise interfere with or disrupt the Company's relationships with its employees.

Mr. Lee–Llacer resigned from Nortec in September, 2007. After terminating his employment with Nortec, Mr. Lee–Llacer performed services for a contractor providing services to The Peace Corps, who Nortec identifies as a client of theirs who Mr. Lee–Llacer was providing services for when he resigned.

Nortec's complaint alleges that

> Llacer is providing the same services to The Peace Corps as Nortec, in direct competition and to the detriment of Nortec. It is believed that Llacer is implementing the remaining phases of the Project designed by Nortec and using Nortec's work product to complete said implementation. Additionally, it is believed that Llacer is providing other services, including, but not limited to, systems maintenance, that Nortec provides in its ordinary course of business.

(Compl. ¶ 20). Nortec goes on to allege that, "since leaving his employment with Nortec, Llacer has contacted Nortec employees, and former employees within the scope of the non-solicitation agreement, to solicit them to leave Nortec in violation of the agreed upon terms of the non-solicitation agreement." (Compl. ¶ 22). Nortec asserts five claims in their complaint: I) breach of contract; II) violation of the Virginia Trade Secrets Act; III) breach of fiduciary duties; IV) tortious interference with business expectancy; V) tortious interference; and VI) statutory conspiracy.

## II. DISCUSSION

### A. Standard of Review

In a recent decision, the supreme Court held that a Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* — U.S. —, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007); *see* Fed.R.Civ.P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when ruling on a Rule 12(b)(6) motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* — U.S. —, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted. *See Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995). Because the central purpose of the complaint is to pro-

vide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## B. Analysis

*Enforceability of non-solicitation and non-compete agreements*

Defendant's Motion to Dismiss Count I (Breach of Contract) is granted because the functions that are proscribed by the non-compete agreement are not limited to the functions that were performed by Mr. Lee–Llacer when he was a Nortec employee, and because the non-solicitation clause contains ambiguous language susceptible to interpretation rendering it functionally overbroad. "With respect to employment with a direct competitor, non-compete clauses that 'restrict the former employee's performance of functions for his new employer [are upheld] only to the extent that the proscribed functions are the *same* functions as were performed for the former employer.'" *Lanmark Tech., Inc. v. Canales,* 454 F.Supp.2d 524, 528 (E.D.Va.2006) (quoting *Cantol, Inc. v. McDaniel,* No. 2:06cv86 2006 WL 1213992 at *4 (E.D.Va. April 28, 2006)); *see also Roanoke Eng'g Sales Co. v. Rosenbaum,* 223 Va. 548, 553, 290 S.E.2d 882 (Va.1982) (finding non-competition covenant reasonable because employment restriction was limited to activities similar to business conducted by former employer). Additionally, when "the non-compete clause is ambiguous and susceptible to two or more differing interpretations, at least one of which is functionally overbroad, the clause is unenforceable." *Lanmark,* 454 F.Supp.2d at 531; *see also Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.,* 270 Va. 246, 249, 618 S.E.2d 340 (Va.2005). In order the determine the enforceability of a non-compete agreement, the Court must evaluate whether the restraint is: (1) reasonable in that it is no greater than necessary to protect the employer's legitimate business interest; (2) is not unduly harsh and oppressive in it's impact on an employee's legitimate efforts to earn a living; and (3) reasonable from a public policy perspective. *Foti v. Cook,* 220 Va. 800, 263 S.E.2d 430 (1980).[1] "[S]olicitation clauses are reviewed under the same standards as those developed for non-competition clauses because solicitation is a form of competition." *Strategic Res. Inc. v. Nevin,* No. 1:05cv992, 2005 WL 3143941, at *2 (E.D.Va. Nov. 23, 2005).

The first step of the three-part analysis is a two-fold determination of whether the restrictive covenants at issue are sufficiently narrowly drawn to protect Nortec's legitimate business interests. *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick,* 239 Va. 369, 371, 389 S.E.2d 467 (Va.1990)(setting forth the three-part analysis for determining the validity of non-compete agreements). It is not unreasonable to conclude that Nortec has a legitimate interest in limiting the potential harm they would suffer through the loss of business that could result were former employees permitted to leave their employ and take the business sensitive knowledge

1. This matter is governed by Virginia law because "(i) this is a diversity action governed by forum state law, including forum choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); (ii) the parties have contractually chosen Virginia law; and (iii) Virginia law gives effect to parties' reasonable contractual choice of law provisions, *Bryant Elec. Co. v. City of Fredericksburg,* 762 F.2d 1192, 1196 (4th Cir.1985)." *Lanmark,* 454 F.Supp.2d at 528 n. 6.

and contacts acquired through their employment with Nortec and use that information to compete with Nortec for their clients' business. "Yet the proffer of a legitimate business interest to support a non-compete clause only begins the analysis because the specific non-compete clause in issue must also be 'reasonable in the sense that it is no greater than is necessary to protect' an employer's legitimate business interest." *Lanmark,* 454 F.Supp.2d at 529 (quoting *Richardson v. Paxton Co.,* 203 Va. 790, 794, 127 S.E.2d 113 (Va.1962)).

This case is strikingly similar to the scenario presented in *Lanmark* where the Court declined to uphold the non-compete agreement between the parties on the grounds that it was not narrowly drawn and functionally overbroad. The Court found that the clause was excessive to the extent that it prohibited "a former employee from *any* form of employment with a competitor, including work unrelated to the employee's work [for their former employer]." *Id.* at 530 (emphasis in original). The Court in *Lanmark* also took exception to the failure of the restrictive covenants to define several key terms, finding that "[b]ecause the non-compete clause is ambiguous and susceptible to two or more differing interpretations, at least one of which is functionally overbroad, the clause is unenforceable." *Id.* at 531.

Here, the restrictions placed on Mr. Lee–Llacer's future employment are similarly overbroad. Mr. Lee–Llacer is prohibited from working for an existing customer or client of Nortec to the extent that the employment relates to *products or services offered by Nortec.* There is no regard for whether his employment with a current Nortec client in any way relates to his prior employment with Nortec and involves the use of any skills or knowledge acquired by Mr. Lee–Llacer in his former position. Nowhere in the agreement does Nortec define what constitutes a "product or service offered". Additionally, it does not require that the employment be related to a product or service offered by Nortec *to that client.* The non-solicitation portion of the agreement is similarly flawed in its restrictions on Mr. Lee–Llacer as well as the use of ambiguous language. In addition to the ambiguous terminology that is included in both the non-compete agreement and the non-solicitation agreement, the nonsolicitation agreement also contains additional ambiguous phrases such as "urge or suggest", "solicit, encourage or induce", and "interfere with or disrupt". Because both the non-compete and non-solicitation agreements are overly broad and ambiguous the Court finds that the clauses are unenforceable. The Court grants Mr. Lee–Llacer's Motion to Dismiss as it pertains to Count I (Breach of Contract) because the contact provisions at issue in Count I are facially overbroad and therefore invalid.

*Breach of Fiduciary Duty*

The Court grants Mr. Lee–Llacer's Motion to Dismiss Count III (Breach of Fiduciary Duties) because it is unclear from the face of the complaint when the alleged breach occurred. "An employee's duty to his employer not to compete arises out of his relationship to his employer." *Hilb, Rogal and Hamilton Co. of Richmond v. DePew,* 247 Va. 240, 249, 440 S.E.2d 918 (1994) (citing Restatement (Second) of Agency § 393 (1958)). "Thus, upon the termination of the relationship, the employee may compete with his employer." *Id.* (citing *Peace v. Conway,* 246 Va. 278, 281–82, 435 S.E.2d 133 (1993)). However,

> Resignation or termination does not automatically free a director or employee from his or her fiduciary obligations.

> Liability post-termination continues only for those transactions completed after termination of the officer's association with the corporation, but which began during the existence of the relationship or that were founded on information gained during the relationship.

*Today Homes, Inc. v. Williams,* 272 Va. 462, 474, 634 S.E.2d 737 (2006).

In order to appropriately state a claim for breach of fiduciary duty in its complaint, Nortec would need to allege behavior by Mr. Lee–Llacer that was either completed during his employment with Nortec or that was commenced while Mr. Lee–Llacer was still in Nortec's employ and that was completed subsequent to his termination. Nortec has failed to allege facts in the complaint that either explicitly meet this requirement or would allow the Court to draw a reasonable inference that Mr. Lee–Llacer's alleged actions took place during the requisite time period. The complaint contains minimal discussion of his conduct while he was employed by Nortec, and fails to include the date when Mr. Lee–Llacer commenced his employment with The Peace Corps so as to lay the foundation for an inference by the Court that Mr. Lee–Llacer must have commenced actions that would constitute a breach of his fiduciary duty while employed by Nortec because of the proximity in time between when he terminated his employment with Nortec and when he commenced his employment with The Peace Corps. The Court therefore grants Mr. Lee–Llacer's Motion to Dismiss Count III (Breach of Fiduciary Duties) because Nortec has failed to plead with sufficient specificity that Mr. Lee–Llacer engaged in conduct during the course of his employment that would amount to a breach of fiduciary duty. The Court grants Nortec leave to amend their complaint to remedy this deficiency.

*Tortious Interference*

The Court grants Mr. Lee–Llacer's Motion to Dismiss Count V (Tortious Interference with Contract) because Nortec has not properly alleged breach of contract or misuse of inside or confidential information in satisfaction of the "improper means" element required to make out a claim for tortious interference with contract. The Court also grants the motion on this count because Nortec has failed to allege whether or not the contract was at-will making it impossible for the Court to determine the applicable analysis on this count.

> The requisite elements for a prima facie showing of a tortious interference with a contract that is *not* terminable at will are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damages to the party whose relationship or expectancy has been disrupted.

*Duggin v. Adams,* 234 Va. 221, 226, 360 S.E.2d 832 (1987) (quoting *Chaves v. Johnson,* 230 Va. 112, 120, 335 S.E.2d 97 (1985)). However, "when a contract is terminable at *will,* a plaintiff, in order to present a prima facie case of tortious interference must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed '*improper* methods.'" *Id.* (quoting *Hechler Chevrolet v. Gen. Motors Corp.,* 230 Va. 396, 402, 337 S.E.2d 744 (1985)(emphasis in original)). "Improper methods may include ... misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.* at 227, 360 S.E.2d 832.

Count V of the Complaint alleges that "after Llacer ceased his employment with Nortec, Llacer has contacted current employees of Nortec in an effort to persuade them to terminate their employment relationship with Nortec." (Compl. ¶ 48). Without Nortec identifying the current employees who are the subject of these allegations and the nature of their employment with Nortec, it is impossible for the Court to know which standard to apply, and whether it is even necessary for Nortec to show improper means. However, assuming as the parties do in their respective pleadings that the employees at issue are in fact at-will employees of Nortec and that therefore Nortec was obligated to plead improper means in the complaint, Nortec has not met this burden.

Nortec argues that they have met their burden with respect to improper means, by pleading both breach of fiduciary duty and misuse of inside or confidential information. (Mem. Opp. Mot. Dismiss 1). As previously discussed, Nortec has failed to appropriately plead breach of fiduciary duty. With respect to misuse of inside or confidential information, Nortec has not explicitly pled in the Complaint an allegation that Mr. Lee–Llacer has used inside or confidential information as it relates to persuading employees to leave Nortec. Nortec has alleged in paragraphs 20–21 that Mr. Lee–Llacer is using confidential information in his current employment with The Peace Corps, however there is a disconnect between that allegation and the allegation that he is using inside or confidential information to solicit Nortec employees. Mr. Lee–Llacer's Motion to Dismiss Claim V (Tortious Interference with Contract) is granted because Nortec has failed to plead with the requisite particularity the use of improper means in the intentional tortious interference with an at-will contract. The Court grants Nortec leave to amend its Complaint to address this deficiency.

*Statutory Conspiracy*

Mr. Lee–Llacer's Motion to Dismiss Count VI (Statutory Conspiracy) is denied because Nortec has pled the elements of the claim with the particularity required by Federal Rule of Civil Procedure 8. Virginia Code § 18.2–499 makes it a crime for any two or more persons to

> [C]ombine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act.

VA.CODE ANN. § 18.2–499 (2008). Pursuant to § 18.2–500 of the Virginia Code, "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2–499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit ...". VA.CODE ANN. § 18.2–500. With respect to pleading the requisite elements to maintain a claim of statutory conspiracy, the Court notes that "Code § 18.2–499 do[es] not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business." *Simmons v. Miller,* 261 Va. 561, 578, 544 S.E.2d 666 (Va.2001).

Mr. Lee–Llacer urges the Court to dismiss Count VI because "Nortec does not allege that Mr. Lee–Llacer conspired to act *with the purpose* of injuring Nortec." (Def.'s Partial Mot. Dismiss 12)(emphasis in original). As previously indicated, this is unnecessary. Additionally, Nortec's Complaint *does* allege that Mr. Lee–Llacer acted willfully, intentionally and maliciously. The Court therefore denies Mr. Lee–

Llacer's Motion to Dismiss Count VI (Statutory Conspiracy) because Nortec has sufficiently pled the requisite elements of this count to withstand the challenge presented by Mr. Lee–Llacer.

### III. CONCLUSION

Mr. Lee–Llacer's Motion to Dismiss Count I (Breach of Contract) is granted because the contractual provisions at issue are facially overbroad and vague and therefore unenforceable. Count III (Breach of Fiduciary Duty) is dismissed because the complaint does not contain allegations implicating actions during a point in time sufficient to maintain this cause of action. Count V (Tortious Interference) is dismissed because Nortec has failed to sufficiently allege improper means and the Complaint does not indicate whether the employees at issue were at-will employees. Mr. Lee–Llacer's Motion to Dismiss Count VI (Statutory Conspiracy) is denied because it is not necessary for Nortec to allege that Mr. Lee–Llacer conspired with others for the purpose of injuring Nortec as asserted by Mr. Lee–Llacer.

For the foregoing reasons, it is hereby

ORDERED that Defendant Carl Lee–Llacer's Motion to Dismiss Counts I (Breach of Contract), III (Breach of Fiduciary Duty), and V (Tortious Interference) are GRANTED. It is further

ORDERED that Defendant's Motion to Dismiss Count VI (Statutory Conspiracy) is DENIED. It is further

ORDERED that Plaintiff, Nortec Communications, is granted leave to amend Counts III and V.

The Clerk is directed to forward a copy of this Order to counsel.